# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hakeem Dunn, : 
          Petitioner : 
           : 
      v. : No. 463 C.D. 2015
           : Submitted: November 13, 2015
Pennsylvania Board of : 
Probation and Parole, : 
          Respondent : 

BEFORE:  HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**             **FILED: January 12, 2016**

Petitioner Hakeem Dunn (Dunn) petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board). The Board denied Dunn's (1) petition for administrative relief and (2) request for relief as set forth in an administrative remedies form. We affirm the Board's order.

In 2008, Dunn was sentenced to serve a term of five-to-ten years for conviction on a drug-related crime. (Certified Record (C.R.) at 1.) The Board granted Dunn parole and released him on April 2, 2012. (C.R. at 10.) On August 22, 2012, the Board issued a warrant to commit and detain Dunn, concurrent with his arrest on new criminal charges. (C.R. at 11, 14.) Dunn did not post bail on the new criminal charges. (Dunn's Br. at 15.) On October 4, 2012, the Board issued a decision detaining Dunn pending the disposition of the new criminal charges. (C.R. at 45.) On May 27, 2014, Dunn entered a negotiated plea agreement resulting in two new drug-related criminal convictions, for which Dunn

received county sentences of three to twenty-three months confinement and four years of probation. (C.R. at 17.) On August 19, 2014, the Board received official verification of Dunn's convictions. (C.R. at 52.) On August 21, 2014, the Board served Dunn with a notice of charges and hearing. (C.R. at 49.) On the same date, Dunn signed a waiver of revocation hearing and counsel and an admission that he had pleaded guilty to the new criminal charges. (C.R. at 51.) By decision rendered October 31, 2014, the Board recommitted Dunn as a convicted parole violator to serve twenty-four months backtime at a state correctional facility, "when available pending parole" from his county sentences. (C.R. at 61-62.) On December 1, 2014, the Board rendered an "order to recommit"[1] Dunn and recorded a decision, referring to the October 31, 2014 decision, which established a potential reparole eligibility date and recalculated Dunn's maximum release date to be July 18, 2019. (C.R. at 64-67.)

As reflected in its PBPP-39 form (C.R. at 64-65), the Board determined Dunn's new maximum release date as follows. At the time the Board paroled Dunn, he had 1,822 days remaining on his sentence. According to the Board, it provided Dunn with a period of credit from July 22, 2014, through November 27, 2014. Although it appears that Dunn had completed the service of his sentence on the new criminal convictions on July 22, 2014, according to the

---

[1] The "order to recommit" is a Board form identified as PBPP-39, which is how we will refer to that document going forward. Although this form is captioned as an order to recommit, it apparently serves the purpose of providing an administrative mechanism for the calculations regarding a parolee's credits and new maximum release dates for original sentences after a parolee has been convicted of new criminal charges. We do not view the captioning of this form to alter the plain fact that the Board's October 31, 2014 decision constitutes Dunn's recommitment order.

PBPP-39, the date of Dunn's "custody for return" was November 27, 2014.[2] (C.R. at 64.) Nevertheless, the Board granted Dunn credit for that 128-day period by subtracting it from the number of days that remained on Dunn's original sentence at the time he was released on parole in 2012, thereby concluding that Dunn still had 1,694 days remaining on that sentence. (*Id.*) Based on that calculation, the Board determined that Dunn's new maximum release date is July 18, 2019. (*Id.*)

Dunn first filed a request for administrative relief from the Board's October 31, 2014 recommitment decision directing Dunn to serve twenty-four months backtime. Dunn asserted that (1) the Board's imposition of a twenty-four month period of backtime was unfair and (2) when the sentencing court issued its sentence on May 27, 2014, it "paroled" Dunn "for the date of November 27, 2012." Dunn contended that, after he was returned to SCI-Graterford, the "green sheet" he received did not include a recommitment order or a "time calculation." (C.R. at 68.) Essentially, Dunn challenged the Board's October 31, 2014 decision based on the fact that it did not include a reparole eligibility date and did not include a calculation of his maximum release date.

Once the Board issued its December 1, 2014 decision, however, Dunn filed his petition for administrative relief, challenging on constitutional grounds the Board's calculation of Dunn's maximum release date. (C.R. at 70.) Dunn contended that the Board erred in its October 31, 2014 decision, by using the

---

[2] We note that although Dunn did not complete the service on his new convictions until July 2014, he was returned to the State Correctional Institution at Graterford (SCI-Graterford) on June 9, 2014. (C.R. at 60.) We note here and later in this opinion that we are uncertain as to how the Board determined November 27, 2014 to be the date upon which Dunn became "available" to begin to serve time on his original sentence.

expression "when available" because, he asserted, he had already completed his service of the imprisonment term the trial court had imposed for the new convictions by July 22, 2014—*i.e.*, he was "available" at the time the Board issued the October 31, 2014 decision. Based upon that claim, Dunn contended that the Board's action in imposing a period of backtime without also providing a date for reparole eligibility and a calculation of a maximum release date violated Dunn's procedural due process rights. Dunn asserted that because the Board did not include an order to recommit—*i.e.*, a PBPP-39 form—in its October 31, 2014 decision, the Board was not authorized to invoke Section 6138(a)(2.1) of the Parole Code, 61 Pa. C.S. § 6138(a)(2.1), to deny Dunn credit for the period he was at liberty on parole. (C.R. at 71.) Dunn, thus, argued that without a PBPP-39 form and recalculation decision at the time the Board issued its October 31, 2014 recommitment decision, the Board forfeited its authority to (1) engage in a recalculation altering his initial maximum release date and (2) deny credit for the period he was at liberty on parole. Thus, the focus of Dunn's administrative review request was that the Board lost subject matter jurisdiction to issue the December 1, 2014 decision, which the Board issued more than thirty days after the initial October 31, 2014 decision.

In response to Dunn's requests for administrative relief, the Board issued a decision in which it rejected Dunn's claims based upon holdings of this Court which stand for the proposition that recommitment and recalculation decisions are separate appealable actions. Thus, the Board rejected Dunn's jurisdictional and due process arguments.

Dunn, now represented by counsel, appeals from the Board's decision, raising the following issues: (1) whether the Board's December 1, 2014 decision

violates Dunn's federal due process rights and (2) whether the Board had subject matter jurisdiction to issue its December 1, 2014 decision, which was more than thirty days after the Board issued its October 31, 2014 decision.

We reject Dunn's claims. As the Board noted, this Court has repeatedly held that recommitment orders and recalculation orders are distinct final orders:

> [A recommitment order] deals with the amount of backtime that will attach whenever the inmate is returned to state custody, and [a recalculation order] computes the actual reparole dates, which cannot be calculated until the inmate is returned to state custody.

*Wright v. Pa. Bd. of Prob. and Parole*, 743 A.2d 1004, 1006 (Pa. Cmwlth. 1999). Here, the Board's October 31, 2014 order was a recommitment order. That order set forth the amount of backtime that the Board determined Dunn should serve because of his new criminal convictions. The decision ordered Dunn's recommitment for a twenty-four month period based upon the particular offenses of which he was convicted. In *Wright*, we held that the parolee prematurely sought to challenge a subsequent recalculation of a maximum release date through her appeal of the Board's earlier recommitment order. In *Wright*, we relied upon our holding in *Woodard v. Pennsylvania Board of Probation and Parole*, 582 A.2d 1144 (Pa. Cmwlth. 1990), where we held that a recommitment decision (deciding only the issue of whether recommitment is warranted and, if so, what period of backtime would be imposed) is a final, appealable order. *Woodard*, 582 A.2d at 1146. In *Woodard*, we reasoned that our holding—that a recommitment order which predates a decision of the Board regarding the date of reparole eligibility and recalculation constitutes a final order—prevented potential problems that might occur if the Board were to wait until it is prepared to issue a decision on all

5

three of those matters—*i.e.*, recommitment, reparole, and recalculation. In both *Wright* and *Woodard*, as in this case, the Board issued separate recommitment and recalculation orders.

Dunn argues, however, that the Board should have known at the time it issued its October 31, 2014 recommitment order that Dunn had completed his sentence on the new convictions and that the trial court had granted him parole when it sentenced him on May 27, 2014. Dunn contends that the Board violated his constitutional rights when its October 31, 2014 order did not recognize that he was "available."

Even if Dunn is correct in asserting that he had been returned to state custody at the time the Board issued its October 31, 2014 decision (and, thus, was available), the Board's December 1, 2014 decision demonstrates the reason why this Court has held that a recommitment order constitutes a final order from which a parolee should appeal, as Dunn did in this case. As the Court explained in *Woodard*, the time of a parolee's return to custody varies and, as in this case, the Board's receipt of information regarding a parolee's status may not always be timely. In this matter, the Board conducted a timely revocation hearing and issued a recommitment decision on October 31, 2014. When it had the information it needed in order to determine Dunn's status with regard to the new criminal sentence, it issued its December 1, 2014 decision. The December 1 decision reflected the fact that the period of time Dunn spent in custody from July 22, 2014, through November 27, 2014, should be credited to Dunn's original sentence, because the Board had learned by that time that Dunn completed the service on his new conviction by July 22, 2014. As we noted above, we are unable to discern how the Board determined November 27, 2014, to be the date upon which Dunn

6

became available again to begin to serve his original sentence again. While we recognize this uncertainty and while the Board may have been uninformed or acting under a misapprehension regarding whether Dunn was already "available" to begin again to serve his original sentence at the time of the Board's October 31, 2014 decision, the Board's December 1, 2014 decision corrected any inaccuracies with regard to the amount of *credit* to which Dunn was entitled on his original sentence. This is because the Board credited Dunn for the period between July 22, 2014 (*i.e.*, the date he had completed serving the sentence on his new convictions) and November 27, 2014 (*i.e.*, the date the Board considered Dunn available to begin to serve his original sentence again). Thus, every day that Dunn was in custody after July 22, 2014, was applied to his original sentence one way or another, either as a credit or as time served.

Finally, with regard to Dunn's claim that the Board erred by failing to award him credit for his time on parole (or street time), this Court recently concluded that the Board did not err in failing to award such credit as it may in the exercise of its discretion under Section 6138(a)(2.1) of the Parole Code, 61 Pa. C.S. § 6138(a)(2.1), where a convicted parole violator waives his right to a revocation hearing and/or counsel and the Board checks the "no" box on the report form relating to whether the Board will grant credit for time spent on parole. *Pittman v. Pa. Bd. of Prob. and Parole*, ___ A.3d ___ (Pa. Cmwlth., No. 978 C.D. 2014, filed January 8, 2016) (en banc). In this case, Dunn signed a waiver of his right to a hearing and to counsel, and the Board checked the "no" box on the hearing report. (C.R. at 54.) Accordingly, we reject Dunn's claim that the Board abused its discretion in denying him credit for his time at liberty on parole.

7

Accordingly, we affirm the Board's order.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hakeem Dunn,                          :
                    Petitioner       :
                                     :
            v.                       :     No. 463 C.D. 2015
                                     :
Pennsylvania Board of                :
Probation and Parole,                :
                    Respondent       :

# **O R D E R**

AND NOW, this 12th day of January, 2016, the order of the Pennsylvania Board of Probation and Parole is AFFIRMED.

_____
P. KEVIN BROBSON, Judge